**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**ERIC S. HIBBS,**

          **Plaintiff,**

    v.                        **Civil Action 2:20-cv-2131**
                                    **Judge Edmund A. Sargus**
                                    **Magistrate Judge Jolson**

**COMMISIONER OF**
**SOCIAL SECURITY,**

          **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Eric S. Hibbs, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff filed his applications for DIB and SSI on October 5, 2016, alleging that he was disabled beginning July 4, 2015. (Tr. 340–57). After his applications were denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on January 11, 2019. (Tr. 118–44). On February 11, 2019, the ALJ issued a decision denying Plaintiff's applications for benefits. (Tr. 96–117). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on April 27, 2020 (Doc. 1), and the Commissioner filed the administrative record on August 18, 2020 (Doc. 10). This matter is now ripe for consideration. (*See* Docs. 13, 14).

### A.  Relevant Hearing Testimony

The ALJ summarized the testimony from Plaintiff's hearing:

> The claimant reported he was involved in an accident and sustained brain injury with chronic headaches and cervical spine pain.  He testified he has headaches weekly and has tried injections, medications, and Botox treatment.  The claimant stated he does not know what triggers the headaches.  He noted when he has a headache, it affects his vision and he is lightheaded. The claimant indicated he currently is not drinking alcohol. He testified he experiences left knee pain.  He noted he has trouble dealing with the public.  The claimant indicated he moved into a friend's place, takes care of the place, feeds the cattle, and mows the grass.  He reported that on a typical day, he is able to clean the house, cook dinner, and take care of the kids.  The claimant stated if he has a massive headache, he has to stay in bed.

(Tr. 105).

### B.  Relevant Medical History

Because Plaintiff's Statement of Errors pertains to only his physical symptoms, the Undersigned limits her analysis of the medical records to the same.  The ALJ also usefully summarized Plaintiff's medical records and symptoms:

> The record established in July 2015 the claimant was involved in a go-kart accident and sustained a head injury with loss of consciousness and left forehead laceration. His computed tomography (CT) scan of the head was normal.  A CT scan of the cervical spine showed arthritis.  He received treatment and at discharge was doing well (Exhibit 1F).

> Neurological records from Alok Bhagat, M.D., from August 2015 revealed the claimant complained of head and neck pain, blurred vision, balancing issues, and hearing loss.  Other than mildly slow and unsteady gait, his examination was normal.  Dr. Bhagat prescribed Gabapentin.  On November 24, 2015, Dr. Bhagat noted the claimant reported good and bad days.  There was no indication of gait abnormalities.  He added new medication.  In January 2016, the claimant complained of headaches with no relief with medication.  He also noted neck pain and episodes of unconsciousness.  Dr. Bhagat indicated left side weakness of the forehead.  However, his gait, reflexes, motor and sensory examinations were all normal.  Furthermore, a CT scan of the head and EEG were normal (Exhibit 2F). The claimant was evaluated at Ohio State University Neurosurgery Center in which he continued to allege headaches aggravated by bright light and loud noise.  His examination was essentially normal.  In fact, the claimant reported doing quite well with increased medication dosage.  During follow up, the claimant reported an

2

episode of vertigo but also indicated the dizziness was not overly bothersome.  He stated his medication was working very well for headaches (Exhibit 3F).

On November 16, 2016, Joseph Rosenthal, M.D., examined the claimant and noted normal gait, sensory examination, and motor examination.  Dr. Rosenthal recommended the claimant try Duloxetine for headaches and nerve pain, and indicated it also might also help with arthritic pain (Exhibit 4F).  The claimant received injections for headaches and neck in which he reported relief of headaches until injection wore off.  He indicated no relief of neck pain (Exhibit 7F).  Records support he continued to report symptoms.  However, he also stated that he had good days.  In fact, the claimant acknowledged that Gabapentin continued to be "very helpful."  The claimant's vertigo was stable (Exhibits 11F and 13F).

Neurology records from Kiran Rajneesh, M.D., in 2017 evidenced the claimant reported right neck pain.  X-rays of the cervical spine showed multilevel disc disease and osteophyte formation. However, his examination was normal.  Therapy was recommended in which the claimant was unable to start.  The claimant complained of numbness and weakness.  He exhibited give away weakness in the right lower extremity and right upper extremity but his strength was normal.  The claimant underwent an EMG/nerve conduction study in which Dr. Fahey diagnosed peripheral neuropathy.  During follow up with Dr. Fahey in December 2017, the claimant alleged worsening headaches.  Dr. Fahey noted the claimant had not pursued therapy as recommended.  Dr. Fahey instructed him to continue with medication and again referred him for therapy.  In February 2018, Dr. Rajneesh indicated the claimant reported neck pain but again he did not pursue therapy as recommended. He recommended therapy and advised smoking cessation, diet, and exercise (Exhibit 19F).  The claimant underwent all therapy except aquatic therapy due to a foot infection in which he denied improvement (Exhibit 19F).  However, the physical therapist noted the claimant had not attended a single session (Exhibit 21F).  Dr. Fahey indicated the claimant's headaches and vertigo were stable and poorly controlled.  He indicated no syncope episode in three months. The claimant was instructed to continue with medications (Exhibit 19F).  In October 2018, the claimant underwent injection for neck pain in which he reported 70-80 percent relief (Exhibit 24F).  The claimant has received treatment for his traumatic brain injury, post-concussion syndrome, post-concussion vertigo, post-concussion headaches, degenerative disc disease of the cervical spine, and peripheral neuropathy. However, the record also reveals that his conditions are stable.  In fact, the claimant's reported activities of daily living discussed throughout the decision supports he functions fairly well.  As recent as December 4, 2018, the claimant reported that he was usually active and was working on a truck (Exhibit 25F, page 5).

Office notes from Corey Jackson, D.O., from 2016 indicate the claimant complained of left knee pain.  He exhibited tenderness of the left with some slight laxity and decreased range of motion. Dr. Jackson prescribed a brace in which the claimant reported helped substantially.  He reviewed the MRI and diagnosed sprain of posterior cruciate ligament (Exhibit 6F).  On December 8, 2016, the claimant

presented to Hilary Haack, D.O., to establish care and reported left knee pain but also noted he did not wear knee brace anymore. His examination was normal (Exhibit 6F). Records from Robert Huff, D.O., from 2017 revealed the claimant had history of left knee issues but was doing well until recently falling. He came with a left knee brace. Dr. Huff stated the claimant's range of motion of the left knee was limited and had muscle atrophy through the left lower extremity. He indicated some instability. The claimant had no evidence of effusion. Dr. Huff referred the claimant for physical therapy in which he only attended one session and was discharged. He indicated pain along the medial aspect of the knee was nearly completed resolved (Exhibits l4F and 15F). In fact, the record supports the claimant received no follow up treatment for his left knee until December 4, 2018, when he presented to Mary Tilton, NP with complaints of left knee pain. Ms. Tilton stated the claimant had no evidence of effusion. His McMurray's test was positive for pain. She indicated no weakness or abnormal gait (Exhibit 25F). The evidence supports the claimant is capable of performing at least light work.

(Tr. 105–07).

## C. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirement through September 30, 2018, and had not engaged in substantial gainful employment since July 4, 2015, the alleged onset date. (Tr. 102). The ALJ also determined that Plaintiff suffered from the following severe impairments: traumatic brain injury, left knee sprain, degenerative disc disease of the cervical spine, peripheral neuropathy, post-concussion vertigo, post-concussion syndrome, post-concussion headache, alcohol abuse, and anxiety disorder. (*Id.*) The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ determined:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand, and/or walk six hours each in an eight-hour workday. He can push and pull as much as he can lift and carry. The claimant can operate foot controls with the left foot frequently. He can never climb ladders, ropes, or scaffolds and occasionally climb ramps and stairs, balance, kneel, crouch, and crawl. The claimant can frequently stoop. He can never work at unprotected heights or with heavy or hazardous machinery, and never operate a

motor vehicle.  He can occasionally work in dust, odors, fumes, and pulmonary irritants.  The claimant can have frequent exposure to extreme cold and extreme heat and occasional exposure to vibration.  He is limited to working in moderate noise.  The claimant should have no exposure to extreme bright lighting, like stage lighting, but can tolerate normal office or home lighting.  He is limited to a low stress environment defined as occasional changes in a routine work setting with no fast-paced production requirements and occasional decision-making required.

(Tr. 104–05).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the evidence for the reasons explained in this decision."  (Tr. 105).  As for the relevant opinion evidence, the ALJ assigned little weight to opinions from treating physician Dr. Brian Fahey in a headache medical source statement.  (Tr. 108).  The ALJ afforded significant weight to opinions from state agency reviewing physicians, Drs. Delphia and Das, who opined that Plaintiff was capable of performing light work with postural and environmental limitations.  (Tr. 109).

Relying on the Vocational Expert's ("VE") testimony, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a telecommunications installation technician, auto mechanic, or construction worker, but that jobs existed in significant numbers in the national economy that Plaintiff could perform.  (Tr. 109–10).  The ALJ, therefore, concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from July 4, 2015, through the date of the decision (20 CFR (20 CFR 404.1520(g) and 416.920(g))."  (Tr. 111).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards."  *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g).  "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*

*v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health &*

*Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  The Commissioner's findings of fact must also

be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  To

this end, the Court must "take into account whatever in the record fairly detracts from [the] weight"

of the Commissioner's decision.  *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL

4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III.    DISCUSSION

Plaintiff asserts that the ALJ erred by improperly evaluating and weighing Dr. Brian

Fahey's November 29, 2018, headache medical source statement.  (Doc. 13 at 6-16).[1]  Plaintiff's

assertion lacks merit.

Because Plaintiff's claim was filed before March 27, 2017, the treating physician rule

described in on20 C.F.R. § 404.1527 applies.  The treating physician rule requires an ALJ to "give

controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the

claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the

case record."  *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x. 377, 384 (6th Cir. 2013) (quoting

20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

If, however, an ALJ determines that a treating physician's opinion is not entitled to

controlling weight, then the ALJ must consider and appropriately weigh the opinion under six

factors: (1) the nature of the examining relationship; (2) the scope of the treatment relationship;

---

[1] The records also contain a one line note from Dr. Fahey dated September 9, 2016, stating the Plaintiff was unable to work due to syncopal episodes.  (Tr. 727).  Plaintiff does not allege that the ALJ erred when analyzing that opinion.

(3) the supportability of the evidence; (4) the opinion's consistency to the record as a whole; (5) the author's specialization to the relevant medical issue; and (6) the "other factors . . . that tend to support or contradict the medical opinion." 20 C.F.R. § 416.927(c). "In addition to balancing these factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires an ALJ to give good reasons for the weight actually assigned." *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[W]e will always give good reasons in [its] notice of determination or decision for the weight [it] give[s to a claimant's] treating source's medical opinion."). In order to satisfy this "good reasons rule," the ALJ's determination "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937.

The reason-giving requirement exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that her physician has deemed her disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citation and quotation marks omitted). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *Id.* "Because the reason-giving requirement exists to 'ensur[e] that each denied claimant receives fair process,' " courts "have held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and explaining precisely how those reasons affected the weight' given 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified

upon the record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (quoting *Rogers*, 486 F.3d at 243).

In certain circumstances, however, an ALJ's failure to give good reasons for rejecting the opinion of a treating source may constitute *de minimis* or harmless error. *Wilson*, 378 F.3d at 547. *De minimis* or harmless error occurs: (1) if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of the procedural safeguard of the good reasons rule even though an ALJ has not complied with the express terms of the regulation. *Id.*

Plaintiff asserts that that the ALJ erred when analyzing Dr. Fahey's November 29, 2018, headache medical source statement. Doc. 13 at 6–17). In that statement, Dr. Fahey wrote that Plaintiff suffered from headaches 24 hours a day, seven days a week, and that he would generally be precluded from performing even basic work activities. (Tr. 970–71). The ALJ had the following to say about Dr. Fahey's opinion:

> As for the opinion evidence, on November 29, 2018, Dr. Fahey completed a headache medical source statement and indicated the claimant had 30 headaches per month lasting 24 hours and that he would be precluded from performing even basic work activities and need a break from the workplace. He stated the claimant would be absent more than four days per month (Exhibit 23F). The undersigned has considered the doctor's specialty and treating relationship with the claimant but gives little weight to this opinion, as the findings are not supported by the objective evidence and appear to be based on the claimant's assertions. However, except for the absenteeism testimony, it does not support disability. In fact, the claimant's reported activities of daily living are essentially normal and support he functions fairly well. As recent as December 4, 2018, the claimant reported he was usually active and was working on a truck (Exhibit 25F, page 5).

(Tr. 108).

The Undersigned concludes that the ALJ properly analyzed Dr. Fahey's November 29, 2018, headache medical source statement. The ALJ explained that this opinion was given little

weight because it was not supported by the objective evidence and appeared to be based on Plaintiff's complaints.  Specifically, the ALJ noted that but for Dr. Fahey's absentee opinion, the headache medical source statement did not support a disability finding.  Substantial evidence supports that determination.  In the headache medical source statement, Dr. Fahey indicated that Plaintiff had only moderate headaches, defined as headaches that "inhibit but [do] not wholly prevent usual activity."  (Tr. 970).  Thus, the headache medical source statement itself indicated that Plaintiff was capable of at least some activity.

The ALJ further indicated that this determination was buttressed by evidence demonstrating that Plaintiff's daily activities were essentially normal.  The ALJ summarized the evidence related to Plaintiff's daily activities at length in the immediately preceding paragraph:

> Furthermore, the claimant's reported activities of daily living are varied and robust as he reported on a typical day he gets children off to school.  He stated he might attend to chores such as washing dishes, vacuuming, and laundry.  The claimant noted he listens to music and watches television and movies.  He indicates he visits with friends.  The claimant reported he prepares dinner for the family . . . .  He stated he could perform personal care and household chores.  The claimant noted he could read and write without difficulty . . . .  The claimant even reported playing basketball . . . .  He also testified that he has played golf and worked on cars since his alleged onset date.  On December 4, 2018, the claimant reported that he was usually active with housework and was working on a truck that day . . . .

(Tr. 108).

Plaintiff asserts, however, that the ALJ erred in using the six relevant regulatory factors when analyzing Dr. Fahey's opinion because those factors apply only after the ALJ has determined to afford less than controlling weight to the opinion.  (*See generally* Doc. 13 at 6–14).  Plaintiff thus contends that the ALJ "blended" or conflated the controlling weight analysis with the six-factor analysis in violation of *Gayheart v. Comm'r of Soc. Sec.,* 710 F. 3d 365, 376 (6th Cir. 2013).  (*Id*. at 12).

The Undersigned disagrees.  To start, *Gayheart* does not require a rigid analysis, as suggested by Plaintiff.  Instead, *Gayheart* requires that the ALJ provide "good reasons" for assigning less than controlling weight to the opinion of a treating physician, namely, good reasons for finding that the opinion was not well-supported by acceptable techniques and/or was inconsistent with other substantial evidence.  710 F.3d at 376.  The ALJ did so here.  He explained that the headache medical source statement was not supported by the objective evidence.  Specifically, the statement itself did not support a finding of disability—Dr. Fahey indicated that Plaintiff's headaches were of only moderate severity.  This was brief, but sufficient.  *Sanders v. Berryhill*, No. 3:16-CV-263, 2017 WL 10808813, at *2 (S.D. Ohio Aug. 15, 2017), *affirmed sub nom. Sanders v. Comm'r of Soc. Sec.*, No. 17-4079, 2018 WL 5099229 (6th Cir. June 14, 2018) ("Lack of objective support (*e.g.*, from treatment notes) for a treating source's opinion, and inconsistency of that opinion with other evidence of record, are valid reasons both for refusing to assign controlling weight to an opinion at step one of the treating physician rule and for discounting the opinion's weight at step two.").  Moreover, the ALJ indicated that Dr. Fahey's opinion was inconsistent with other substantial evidence—evidence of Plaintiff's activities of daily living.

Even assuming, *arguendo*, that the ALJ's discussion was technically insufficient, remand would not be warranted.  If technical compliance is lacking, an ALJ may satisfy the procedural safeguards by implicitly providing sufficient reasons for not giving a treating physician's opinion controlling weight.  For example, in *Nelson v. Commissioner of Social Security,* the Sixth Circuit concluded that an ALJ failed to give good reasons for giving the opinions of two treating physicians little weight.  195 F. App'x. 462, 470 (6th Cir. 2006).  Nevertheless, the ALJ's analysis of the record evidence adequately addressed the treating physicians' opinions by indirectly attacking both their supportability and their consistency.  *Id*; *see also Coldiron v. Comm'r of Soc.*

*Sec.*, 391 Fed. App'x. 435, 440 (6th Cir. 2010) (citing *Nelson*, 195 F. App'x at 470) ("An ALJ may accomplish the goals of the procedural requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with evidence in the record.")).  When determining whether an ALJ indirectly attacked the treating physician's opinion, "courts look at the ALJ's decision itself, not the other evidence in the record." *Coldiron*, 391 F. App'x. at 440.

In this case, the ALJ's decision indirectly attacked the supportability and consistency of Dr. Fahey's opinion.  The ALJ considered the record evidence and noted that Plaintiff testified that he had headaches on a weekly basis.  (Tr. 106, 970).  The ALJ discussed that, despite Plaintiff's complaints, his examinations and diagnostic tests were generally normal.  (Tr. 106). The ALJ wrote that Plaintiff reported some relief with increased doses of medication and that Plaintiff stated that his medication was working very well for headaches.  (*Id.*).  The ALJ explained that even though Plaintiff reported to Dr. Fahey that he had worsening headaches in December of 2017, Dr. Fahey wrote that Plaintiff had failed to pursue recommended therapy.  (*Id.*). Additionally, the ALJ indicated that, although Dr. Fahey wrote that Plaintiff's headache and vertigo were poorly controlled, Dr. Fahey also found both conditions stable.  (*Id.*).  The ALJ also noted that Dr. Fahey had found that Plaintiff had not experienced episodes of syncope in three months. (*Id.*).  The ALJ further considered Plaintiff's activities of daily living, noting that he functioned well, was usually active, and had worked on a truck on December 4, 2018.  (Tr. 108). By discussing the medical records, assessments, and other evidence that was inconsistent with Dr. Fahey's opinion, the ALJ adequately indicated why that opinion was not entitled to controlling weight.

Plaintiff asserts a final challenge to the ALJ's discussion of Dr. Fahey's opinion.  He contends that the ALJ failed to give good reasons for discounting Dr. Fahey's opinion.

11

Specifically, that "[t]he only evidence cited by the ALJ to demonstrate that [Plaintiff's] daily activities are essentially normal is that [Plaintiff] 'reported that he was usually active and was working on a truck' during a December 8, 2018 appointment."  (Doc. 13 at 15).  That is an inaccurate description of the ALJ's discussion which, as already described above, was far more detailed.  Moreover, substantial evidence supported the ALJ's determination that Plaintiff's daily activities were inconsistent with a determination of disability.  Plaintiff does not allege, and the Undersigned does not conclude, that the ALJ inaccurately described record evidence related to Plaintiff's activities.  Instead, Plaintiff appears to allege that other contrary evidence shows that his limitations were work preclusive.  Nonetheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley*, 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In sum, the ALJ properly analyzed Dr. Fahey's November 29, 2018, headache medical source statement, and any alleged error was *de minimis* given the ALJ's discussion of the record evidence.

IV.    **CONCLUSION**

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's disability determination be **AFFIRMED**.

V.    **PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination

12

of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: January 29, 2021                                   /s/ Kimberly A. Jolson
                                                         KIMBERLY A. JOLSON
                                                         UNITED STATES MAGISTRATE JUDGE